UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-0125-CVE |
| ) | |
| JOSEPH LAWRENCE GREGORY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Quash Indictment (Dkt. # 14). Although styled a motion to quash, defendant is actually asking the Court to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b), because the indictment allegedly does not notify defendant of the charges against him. He also argues that the forfeiture allegation in the indictment is fatally defective. The government responds that the indictment adequately states the charged offenses and notifies defendant that the government is seeking forfeiture.

On July 11, 2008, the Grand Jury returned an indictment charging defendant with two counts of bank fraud in violation of 18 U.S.C. § 1344(2). The indictment alleges that defendant owned, in part, and operated two construction companies knows as ARJO Construction, LLC ("ARJO") and CJ Acquisitions, LLC ("CJ"). ARJO agreed to construct the Zoom Zone Carwash in Tulsa, Oklahoma for TWB, LLC ("TWB"), and TWB obtained financing for the construction project from Gold Bank. The indictment alleges that Gold Bank is a financial institution within the meaning of 18 U.S.C. § 20. TWB required ARJO to obtain a performance bond as a prerequisite to payment under the construction contract. Defendant believed that CJ could obtain a performance bond at a

lower cost than ARJO, and TWB agreed to execute a new contract between CJ and TWB for the construction of the Zoom Zone Carwash.[1]

The contract price for construction of the carwash was $475,000, and the parties agreed to the following payment schedule:

- Twenty percent (20 %) after purchase
- Thirty percent (30 %) after building slab
- Thirty percent (30 %) after panel erection
- Twenty percent (20 %) after project completion

Dkt. # 2, at 2. Defendant presented a performance bond that allegedly obligated ARJO and Alliance Reinsurance Group to Gold Bank in the amount of $481,000 and protected TWB from lawsuits arising out of ARJO's performance of the construction contract. However, Alliance Reinsurance Group does not exist and the performance bond was forged. Around May 2005, TWB authorized Gold Bank to disburse $144,330 of progress payments to defendant. The government alleges that defendant committed bank fraud by presenting a forged performance bond to obtain funds within the control of Gold Bank.

An indictment may be dismissed under Fed. R. Crim. P. 12(b) if the facts alleged in the indictment fail "to invoke the court's jurisdiction or state an offense." When reviewing a motion under Rule 12(b), a court must make all factual inferences in favor of the government and assume that the government could prove all of the facts alleged in the indictment at trial. United States v. Jeronimo-Bautista, 425 F.3d 1266, 1267 (10th Cir. 2005). An indictment is sufficient if it:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and

---

[1] The indictment alleges that the parties continued to refer to the construction company as "ARJO" in the revised documents, and the government refers to the party seeking payment as ARJO.

2

>(3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

United States v. Hall, 20 F.3d 1084 (10th Cir. 1994). The purpose of a motion to dismiss under Rule 12 is not to challenge the strength or weakness of the government's case, but merely to determine whether the indictment states an offense. United States v. Todd, 446 F.3d 1062 (10th Cir. 2006).

Defendant is charged with two counts of violating § 1344(2). Section 1344 states:

>Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
>(1) to defraud a financial institution; or
>
>(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
>shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Defendant's motion confuses the elements of offenses under §§ 1344(1) and (2), and these are distinctly different offenses. See United States v. Cronic, 900 F.2d 1511, 1513 (10th Cir. 1990) ("Although largely overlapping, a scheme to defraud, and a scheme to obtain money by means of false or fraudulent pretenses, representations, or promises, are separate offenses."). The Tenth Circuit has held that:

>[e]ach crime requires a defendant first to knowingly execute a scheme or artifice. To convict a defendant of a crime under subsection (1), the government would have to prove the scheme *defrauded* the financial institution. To convict a defendant under subsection (2), the government would have to prove the scheme enabled the defendant to obtain certain property "*by means of false or fraudulent pretenses, representations or promises*."

United States v. Swanson, 360 F.3d 1155, 1162 (10th Cir. 2004) (quoting United States v. Bonnett, 877 F.2d 1450, 1453-54 (10th Cir. 1989)). The elements of an offense under § 1344(2) are: "(1) that the defendant knowingly executed or attempted to execute a scheme . . . (ii) to obtain property by

3

means of false or fraudulent pretenses, representations or promises; (2) that defendant did so with intent to defraud; and (3) that the financial institution was then insured by the Federal Deposit Insurance Corporation." United States v. Akers, 215 F.3d 1089, 1100 (10th Cir. 2000).

The indictment states each element of an offense under § 1344(2). First, the indictment alleges that defendant engaged in a scheme or artifice to obtain money from Gold Bank "for the payment of contractual progress payments and invoices that ARJO presented to TWB and the bank, without ARJO's having to incur the cost of obtaining a genuine performance bond." Dkt. # 2, at 3. In furtherance of this scheme, defendant allegedly represented to TWB and Gold Bank that he had actually obtained a performance bond. However, this was a misrepresentation. The purported performance bond stated that a non-existent insurer, Alliance Reinsurance Group, Ltd., insured the bond and this was an misrepresentation. Second, the indictment alleges that defendant "caused the submission of the bogus Alliance bond and an invoice that falsely claimed reimbursement for the purported cost of the bond to Gold Bank for the purpose of deceiving and misleading the bank." Id. at 3-4. Third, the indictment alleges that Gold Bank was insured by the Federal Deposit Insurance Corporation ("FDIC") and qualifies as a financial institution under 18 U.S.C. § 20.

Defendant argues that the indictment does not allege that Gold Bank required ARJO to post a performance bond and, because Gold Bank did not require a bond, it could not be defrauded by defendant's alleged misrepresentation concerning the insurer of the bond. Defendant cites no authority supporting this argument and the allegations of the indictment are sufficient to allege an offense under §1344(2). The Tenth Circuit has interpreted federal bank fraud statutes to encompass a wide range of fraudulent activity to protect the "integrity of the federal banking system." Akers, 215 F.3d at 1102. Under § 1344(2), it is a crime to obtain funds within the control of a financial

institution by means of a false representation, even if the bank does not suffer an actual pecuniary loss. United States v. Sapp, 53 F.3d 1100, 1103 (10th Cir. 1995). Accepting the allegations of the indictment as true, it appears that defendant misrepresented the validity of his performance bond to TWB and Gold Bank in order to obtain a progress payment under the construction contract and, although the payment was authorized by TWB, the funds were held by Gold Bank. This was a scheme or artifice to obtain funds held by an FDIC insured bank and falls within the scope of § 1344(2). Defendant's motion to dismiss Counts One and Two of the indictment should be denied, because the indictment states an offense against defendant under § 1344(2).

Defendant also argues that the criminal forfeiture allegation of the indictment is fatally defective, because it fails to recite that forfeiture will be part of any sentence in this case. However, there is no doubt that defendant is on notice of the forfeiture allegation. The indictment cites 18 U.S.C. § 982 and Fed. R. Crim. P. 32.2 and this adequately notified defendant of the legal basis of the forfeiture allegation. Rule 32.2(a) states:

> **(a) Notice to the Defendant.** A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.

According to the advisory committee notes to Rule 32.2, this rule simply requires notice to the defendant that the government intends to seek forfeiture, but it does not require an itemized list of property to be forfeited or impose a heightened pleading requirement. Advisory Committee's Notes to Fed. R. Crim. P. 32.2(a) (2000 Amendments). The mere fact that the forfeiture allegation does not specifically state that forfeiture may be part of defendant's sentence does not show that the indictment is defective. See United States v. Silvious, 512 F.3d 364 (7th Cir. 2008) (notice requirement of Rule 32.2(a) satisfied if the defendant is given sufficient notice to prepare a defense

against forfeiture allegation); <u>United States v. Diaz</u>, 190 F.3d 1247 (11th Cir. 1999) (same). Defendant is undoubtedly aware of the forfeiture allegation in the indictment and his motion to dismiss the forfeiture allegation should be denied.

**IT IS THEREFORE ORDERED** that defendant's Motion to Quash Indictment (Dkt. # 14) is **denied**.

**DATED** this 23rd day of September, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT